## CIRCUIT COURT OF CAMPBELL COUNTY

J. E. Sears & Co., Inc.

v.

G.D.S. Corp.

June 22, 1973

By JUDGE WILLIAM W. SWEENEY

This is a suit in chancery wherein the plaintiff company seeks to enforce a mechanic's lien against real estate with improvements in the Thomas Terrace subdivision of Campbell County, Virginia. The cause was referred to a Special Commissioner who filed his report on April 18, 1973. Counsel for G.D.S. Corporation filed exceptions to the report on the grounds that the Commissioner attempted to compromise the case rather than decide it. Other than this, no exceptions were taken to the Commissioner's findings. No specific exception was taken to the Commissioner's findings in favor of the plaintiff in the sum of $4,327.94 nor his implied dismissal of the cross-claim. No exception was made as to paragraph two of the Commissioner's report which reported findings adverse to the defendant. No exception was made that the Commissioner decided the case wrong on its merits but only that he did not choose one of the three options open to him.

In effect, the Commissioner found in favor of the plaintiff on the evidence. With this I agree. I do not agree, however, as to the amount awarded by the Commissioner since it was an attempted compromise. While I am sympathetic with the Commissioner's position and agree with him that the parties should exhaust all settlement possibilities because of the nature of this case, at this stage, settlement is for the lawyers and not for the Court or Commission-

er. Based upon the ore tenus hearing before me on June 11, 1973, and the evidence and briefs which I have read, I adopt the plaintiff's theory of this case and rule in favor of the plaintiff in the amount of the lien claimed, $6,140.06. I rule against the defendant on its cross-claim. My reasons are as follows.

I realize that the evidence in this matter is in conflict on many material issues and thus I have had to adopt the theory which to me seems most reasonable and credible. There is no need to restate the facts herein except to say that the two corporate parties, acting through their principals, Robert Sears for the plaintiff and Ronald Dawson and others for the defendant, made an oral contract to engage in a business venture to build an apartment house on land in Campbell County. The building has now been completed and is being rented. It has a fair market value of $124,000.00 (Tr. 8). In effect, Sears, acting as an agent for plaintiff company which both contracts to build buildings and sells building supplies also, agreed to build the apartment for cost plus 10% commission. All went well until the building was completed at which time plaintiff presented its bill for unpaid commissions on labor and material billed through J. E. Sears and Company. At that time, a difference of opinion developed as to the meaning of the word "cost" in the cost plus 10% arrangement. Did it mean invoice or factory cost of materials to J. E. Sears and Company or did it mean its retail cost, the price the company would sell to other contractors? This is the sole issue in the case. There is no question about cost as related to labor or subcontractors' work, a part of which has already been paid by the defendant. The only question is whether plaintiff agreed to construct the building at factory cost of materials to it or at the price it sells to other contractors.

Because of the family relationships involved in this business venture, some of the work on the apartment was billed directly to the defendant company by subcontractors and no commission was charged by the plaintiff. This amount was $29,361.00 (Tr. 105). Plaintiff's bill alleges that labor and material in the sum of $90,578.55 was billed through the plaintiff company and that a 10% commission of this figure would be $9,057.00 as to which $2,917.00 has already been paid leaving a balance due of $6,140.00.

The commission on labor (company carpenters and helpers and subcontractors) was billed to defendant company on monthly invoices. According to Robert Sears, he informed the other partners in the defendant company that the commission on materials would be billed at the completion of the job (Tr. 61). Robert Sears testified:

BY THE COMMISSIONER:

Q. My question is, why did you bill all along on the commission on the subs and wait until after the completion of the contract to bill on the labor or material?

A. I did it with the idea, which I usually do on all my contracts, is to save the owner money, because if he has to borrow money prior to the completion to pay this extra 10 percent it would be extra cost, interest to him, paying on this money he's paid me commission on prior to the completion.

Q. If you were going to do this, why didn't you explain to them that this was going to be done?

A. Well, I did with Mr. Dawson. He came down on the first, after the first billing and questioned me; said, "I see you've got 10 percent charged on this sub-contracting." I think it was for grading. I said, "I'm charging my 10 percent on the sub-contractors, and I'll wait and charge my final 10 percent at the completion of the job. He came down to my house after the first billing. Evidently he had seen the billings on the first billings to G.D.S.

Q. Is Mr. Dawson one of the four?

A. He was the President of the Corporation at the time.

Q. Which corporation?

A. G.D.S.

Mr. Commissioner: That's all I wanted to find out. (Tr. P. 143, 144)

Ronald Dawson, himself a building contractor, and, at the time (but no longer) the partner of defendant company with whom Robert Sears had most contact, does not deny this agreement and, in fact, seems to confirm Sear's idea of what "cost" meant. Ronald Dawson testified:

Q. You now know that invoice costs to J. E. Sears isn't a realistic figure, don't you?

A. Yes, sir.

Q. That if you were to buy materials to build a house for yourself or to sell, you would have to pay his retail price, wouldn't you?

A. If I was buying from him I reckon I would. (Tr. 151)

J. E. Sears and Company is not only in the building contracting business but sells building supplies as well. This is an important fact in this suit. In selling supplies it has one price for all customers and, in general, its prices are competitive (though somewhat higher) than other building supply firms which sell at wholesale. The company's operating overhead runs about 15% according to their accountant and therefore the company would have to lose money on a factory cost of materials plus 10% job. (See testimony of Mr. Neher pp. 36-54.) Case authority on what is meant by "cost plus 10%" (See Annotation "Construction of Cost Plus Contracts," 27 A.L.R. 48) is not helpful here because of the unique operations of Sears and Company. In other words, if an individual building contractor in the Appomattox area agreed to construct a building for "cost plus 10%" he would probably mean the cost of the materials *to him* since he does not sell materials. He would go to Sears and Company, buy the building materials at their regular price and add 10% to that figure. If

Sears and Company contracted to build the same building the commission would be the same to the owner as if he had hired an individual contractor even though the individual was figuring "cost" at cost to him and Sears and Company was figuring cost at its mark-up material price. Therefore, the defendant company should be paying approximately the same commission on materials on a cost plus contract whether it contracted with Sears and Company or an individual contractor. Viewed in this light, it makes little difference how "cost" is defined.

Based on the testimony, I find the following facts.

1. All parties were unwise in not reducing their agreement to writing. Someone must suffer as a result thereof.

2. Robert Sears, acting for plaintiff company, knew what was meant by "cost" in the agreement; thus, there is no mutual mistake of fact as defendants' counsel has suggested.

3. From the evidence, I have to assume that the other principals in the defendant company were not sure what cost meant and made no particular effort to find out but assumed it meant "factory cost" to Sears and Company.

4. One of the partners of defendant company, (no longer a partner) Ronald Dawson, is himself a building contractor and either knew or should have known how Sears was figuring cost on the job. Plaintiff company had never figured cost on a job in a different way unless their officers or employees were buying for their personal use.

5. The evidence preponderates that other companies similar to J. E. Sears and Co. operating in the Appomattox area defined cost as did Robert Sears and that Sear's interpretation followed the usual custom, trade and practice in that area for firms which both contracted work and sold materials. (See testimony of Jamerson and Taylor). There was some objection to this line of testimony but defendants relied on it too, particularly as to the custom in close family deals.

6. Even though the principals in this suit are closely related through overlapping family and business connections, there was no proven fraud, unfair business dealings or violations of fiduciary relationships between any of the parties. There were serious misunderstandings, to be sure,

but no proof of purposeful wrongdoing, duress, or unfair advantage.

7. The fact that monthly billings of materials to the defendant company showed a 2% discount for payment within thirty days was not consistent with an "invoice cost" interpretation.

8. The equities of the suit favor an interpretation which would result in the contractor making a reasonable profit on the job.

According to my findings, if any mistake in the formation of the contract was made, it was a unilateral mistake on the part of the defendant company. In my opinion, the plaintiff has carried the burden of proof on the two requirements set out on page two of defendants' brief.